IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GUILLERMO BALLEZA, § | | |
| Petitioner/Movant, § | | |
| § | | |
| v. § | | 3:11-CV-0505-K |
| § | | (3:08-CR-079-K) |
| UNITED STATES OF AMERICA, § | | |
| Respondent. § | | |

MEMORANDUM OPINION AND ORDER

Before the Court for consideration is Petitioner Guillermo Balleza's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 and, in the alternative, petition for writ of error *coram nobis*; the Government's response; and Petitioner's reply. (Doc. 1, 12, 13.) For the reasons that follow, the section 2255 motion and, alternative, request for writ of error *coram nobis* are denied.

I. BACKGROUND

Following his indictment for possession with intent to distribute a controlled substance and possession of a firearm in furtherance of a drug trafficking crime, Petitioner filed a motion to suppress cocaine and firearms seized as a result of the warrantless search of his residence. *United States v. Balleza*, 3:08-CR-079-K (N.D. Tex. 2008). After an evidentiary hearing, the Court denied the motion to suppress, finding that consent was voluntary consistent with the testimony of Garland Police Officer Dennis Morrow, and rejecting the testimony of Petitioner and his wife that Morrow had

threatened to arrest Petitioner's wife or have Child Protective Services take their children. In April 2009, Petitioner pled guilty, without reserving the right to appeal the denial of the suppression motion, and conceding in the Factual Resume that he had consented to the search of his home. Then, in March 2010, the Court sentenced him to two 60-month terms of imprisonment, to run consecutively, and a four-year term of supervised release. Petitioner did not appeal. Instead, he timely filed this section 2255 motion through retained counsel.

In his sole ground, Petitioner contends "the [G]overnment deprived him of a full and fair opportunity to litigate his Fourth Amendment guarantees by not disclosing, albeit after the fact, that [Officer] Morrow was damaged goods as a government witness," and hence no longer credible. (Doc. 1 at 10.) Petitioner relies on a July 2010 state court ruling, issued *after* his sentencing, that found Morrow not to be credible as a result of a September 2009 Internal Affairs Investigation, and that ultimately resulted in the dismissal of state and federal indictments. *Id.* at 4-6. Petitioner also claims, that *before* his sentencing, in the Fall of 2009, the Government knew, or should have known, that Morrow's credibility was clouded. *Id.* at 7. In support, he relies on Morrow's September 2009 Internal Affairs Investigation and the return of a federal indictment in *United States v. Robert Young*, 3:09-CR-335-K. *Id.* at 7-9. Claiming he "was unable to move to withdraw his plea and seek a rehearing of the suppression motion" before his sentencing, Petitioner requests the Court to set aside his guilty plea and sentence, and to re-open the hearing on his motion to suppress. *Id.* at 10, 13. In that regard, he

requests the Court to authorize discovery under Rule 6(b), of the rules Governing Section 2255 Proceedings. *Id.* at 13. Alternatively, Petitioner requests *coram nobis* relief based on the alleged extraordinary nature of his case and Morrow's newly found lack of credibility. *Id.* at 12-13.

The Government opposes the section 2255 motion, arguing Petitioner's guilty plea bars his Fourth Amendment and impeachment claims, and *coram nobis* relief is unavailable. (Doc. 12 at 11, 13, and 15-17.) Petitioner replies reiterating the extraordinary circumstances of his case. (Doc. 13 at 3-6.)

## II. TIMELINE OF EVENTS

On September 2, 2009, four months after Petitioner's guilty plea, the Garland Police Department Internal Affairs Unit issued a report addressing specific instances of misconduct (untruthful reporting and unbecoming conduct) by Officer Morrow in preparing the July 2009 arrest report of Tramane Hooks. (Doc. 10 (Sealed) at 2-21.) The same day, the Government notified Petitioner's counsel of Morrow's Internal Affairs Investigation in the Hooks's matter, by sending him an e-mail in *United States v. Kevin Triplett,* No. 3:09-CR-009-O(02) (N.D. Tex.). (Doc. 12, Exh. 2.) Ultimately, on September 16, 2009, the Garland Chief of Police found the allegations against Morrow "not sustained" (Doc. 10 (Sealed) at 22), and the Government did not to advise Petitioner's counsel in the *Triplett*'s case of the details and outcome of the Morrow's Internal Affairs Investigation in the Hooks' matter. (Doc. 13 at 3.) Nevertheless, on September 26, 2009, shortly before a hearing on a pending motion to disclose informant,

*see id.* at 3-4, the Government dismissed the *Triplett*'s charge, alleging that an "investigation following the return of the indictment . . . [had] uncovered information indicating that Triplett's role in the drug transactions . . . [was] in question." *See Triplett*, No. 3:09-CR-009-O(02), Mot. to Dism. Indictment (Doc. 46). Hooks's case was also never filed with the Dallas County District Attorney's Office. Then, on November 2009, the Government obtained a federal indictment in *United States v. Robert Young*, 3:09-CR-335-K (N.D. Tex.), in which Morrow had also served as the arresting and case officer.

On March 10, 2010, unaware of Morrow's inconsistent statements in Hooks' 2009 arrest report, Petitioner proceeded to sentencing. (Doc. 1 at 3-4.) Two days later, however, State Judge Pat McDowell began a suppression hearing in *State v. Patrick Woodward*, Nos. F09-23973 and 23974, regarding another warrantless arrest and search carried out by Morrow. *Id.* At that hearing, Garland Police Officers testified that they had doubts about Morrow's credibility since he had a history of writing inaccurate reports and had lied in Hooks' arrest report. *Id.* at 4-5. Ultimately, on July 6, 2010, Judge McDowell granted the suppression motion, resolving all credibility issues in favor of Woodward and against Morrow, and the State eventually dismissed the case. *Id.* at 5-6. Morrow's credibility also came to light in *State v. John Lambert*, Nos. F09-23840, 23841, 23842, and 23843, where the court credited the defendant's testimony that Morrow coerced him to consent to the search. *Id.* at 6. Likewise, in August 2010, as a result of Morrow's credibility issues, the Government dismissed the indictment in *Young*,

No. 3:09-CR-335-K, after opposing the defendant's request for production and inspection of Morrow's Internal Affairs investigation in the Hooks' matter. *Id.* at 8-9.

### III. ANALYSIS

Following conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). Under 28 U.S.C. § 2255, a petitioner ordinarily can collaterally challenge his conviction only on constitutional or jurisdictional grounds. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*).

At the outset, the Court notes that Petitioner does not challenge the voluntariness of his guilty plea, does not argue his guilty plea was induced by threats or promises, and does not claim he is actually innocent of the criminal charges. Rather, relying on the unusual circumstances surrounding Morrow's credibility, he seeks to vacate his guilty plea and requests the Court to grant him a new opportunity to litigate the suppression motion.

    A.    <u>Fourth Amendment Claim</u>

Petitioner argues that he was deprived of a full and fair opportunity to litigate his Fourth Amendment claim of unlawful search and seizure. However, "[a] plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction," including "objections to searches and seizures that violate the Fourth Amendment." *United States v. Cothran*, 302 F.3d 279,

285–86 (5th Cir. 2002) (internal quotation marks and citation omitted). Petitioner entered an unconditional guilty plea in April 2009, after the Court denied his motion to suppress. He presents no argument and cites no authority to suggest that he did not waive his right to challenge the search and seizure when he pleaded guilty. *See United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999) ("When a trial court denies a motion to suppress and the defendant subsequently enters an unconditional plea of guilty, the defendant has waived the right to raise further objection to that evidence."). Accordingly, the Court finds that Petitioner's Fourth Amendment claim is waived. *See United States v. Allen*, 250 Fed. Appx. 9, 12 (5th Cir. 2007) (unpublished per curiam) (affirming denial of section 2255 motion because defendant waived right to challenge search when he pleaded guilty).

Notwithstanding waiver, a Fourth Amendment claim is barred on collateral review if the petitioner had a full and fair opportunity to litigate the claim in pre-trial proceedings and on direct appeal. *United States v. Ishmael,* 343 F.3d 741, 742 (5th Cir. 2003) (extending *Stone v. Powell*, 428 U.S. 465, 494 (1976), to section 2255 case). Here, it is undisputed that, as of the time of the suppression hearing and ensuing guilty plea, Petitioner had been provided "a full and fair" opportunity to litigate his Fourth Amendment claim. The Government had <u>no</u> knowledge of any issue relating to Morrow's credibility <u>before</u> the February 2009 suppression hearing and the April 2009 guilty plea.

Petitioner claims, however, that the Government had an "after[-]the[-]fact" duty

to disclose that Morrow had become "damaged goods as a government witness" and was no longer credible. (Doc. 1 at 10.) Relying on *Giglio v. United States*, 405 U.S. 150, 153 (1972), Petitioner asserts "[t]he Due Process Clause of the Fifth and Fourteenth Amendments forbids the government from knowingly using, or failing to correct false testimony. (Doc. 1 at 10.) Petitioner posits that, by the fall of 2009, "the prosecutors had actual knowledge or should have had actual knowledge, that Morrow's credibility was clouded by allegations of deceit by members of his own police department." (Doc. 1 at 7.)

Yet, Petitioner presents no plausible argument in support of his claim and merely relies on Morrow's September 2009 Internal Affairs investigation in the Hooks' matter. *Id.* Because the allegations against Morrow were "not sustained," it is unclear how that Internal Affairs Investigation in-and-of itself could have provided the Government with sufficient notice that, as of September 2009, Morrow was no longer trustworthy and his credibility clouded. In addition, the Government notified Petitioner's defense counsel, albeit in a different case, of Morrow's Internal Affairs investigation as early as September 2, 2009.

Nevertheless, Petitioner cites no case, and this Court has found none, for the proposition that a court can rely on events that arose long *after* a suppression hearing in assessing whether a defendant had a "full and fair" opportunity to litigate his Fourth Amendment claim. In light of the above, the Court concludes that Petitioner's guilty plea waived the legality of the search and seizure claims and, in the alternative, that he

had a full and fair opportunity to litigate his Fourth Amendment claims at his suppression hearing. Therefore, Petitioner's Fourth Amendment claim is denied.

    B.    <u>Impeachment Claim</u>

Petitioner contends the Government withheld allegedly impeachment evidence, which rendered his guilty plea unintelligent, unknowing, and involuntary. (Doc. 1 at 11.) He cites *Bousley v. United States*, 523 U.S. 614 (1998), for the proposition that a guilty plea may be attacked under limited circumstances. *Bousley*, however, alleged facts, which if proven, demonstrated that he was actually innocent of the underlying criminal charge, and that he was induced to enter an unintelligent and, therefore, constitutionally invalid plea. 523 U.S. 623-24. Here, Petitioner does not contend that he is actually or factually innocent of the charges to which he pled guilty.

Next, Petitioner asserts that the "Morrow impeachment evidence was due to him when it was known by the government. Only then would he have been accorded a full and fair opportunity to defend his case." (Doc. 1 at 12.) Petitioner explains:

> He 'over appreciated' the government's case with the mistaken belief that Morrow, whom he knew to have lied, was unassailable. He was counseled that appeal would be fruitless because this Court's pretrial ruling was steeped in credibility determinations which are viewed with due deference by the courts of appeal. [Ultimately, he] cut his losses and pleaded guilty not ever learning until he read it in the newspapers that the Morrow-believability-landscape had up heaved.

*Id.* at 11.

*Brady v. Maryland,* 373 U.S. 83 (1963), prohibits the government from suppressing evidence favorable to the accused when the evidence is material either to

guilt or punishment. *United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010). *Giglio*, 405 U.S. 150, applied the *Brady rule* to evidence affecting the credibility of key government witnesses. *Davis*, 609 F.3d at 696.

Several federal Circuit Courts of Appeals have held that a *Brady* violation can be used to challenge a guilty plea conviction. *E.g.*, *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988); *Miller v. Angliker*, 848 F.2d 1312, 1319–20 (2d Cir. 1988); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985). The United States Court of Appeals for the Fifth Circuit, however, has concluded that "a guilty plea precludes the defendant from asserting a *Brady* violation." *United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (per curiam) (citing *Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000); *Orman v. Cain*, 228 F.3d 616 (5th Cir. 2000)). As explained in *Orman*, "*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty." 228 F.3d at 617; *accord*, *United States v. Ruiz*, 536 U.S. 622, 634 (2002) (Thomas, J., concurring). "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." *Matthew*, 201 F.3d at 361-62. *See also Wiand v. United States*, No. 3:10-CV-1420-M, 2012 WL 1033623 (N.D. Tex. Jan. 17, 2012) (relying on *Conroy* to deny section 2255 motion raising impeachment evidence claim following guilty plea), *recommendation*

*accepted*, 2012 WL 1037439 (N.D. Tex. Mar. 27, 2012); *Comer v. United States*, No. 3:09-CV-1261-N, 2009 WL 5033924 (N.D. Tex. Dec. 18, 2009) (same). Accordingly, since Petitioner pled guilty, his *Brady/Giglio* impeachment evidence claim fails.

C. Writ of Error *Coram Nobis*

Likewise, Petitioner is not entitled to relief by way of a writ of error *coram nobis*. "The writ of *coram nobis* is an 'extraordinary remedy,' available to a petitioner no longer in custody who seeks to vacate his conviction in circumstances where 'the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal convictions and that the challenged error is of sufficient magnitude to justify the extraordinary relief.'" *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) (*citing United States v. Morgan*, 346 U.S. 502, 511 (1954); *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989)).

Petitioner is currently serving the 120-month sentence imposed in Case No. 3:08-CR-0079-K. Because he is still in custody on the federal sentence he seeks to challenge in this action, relief by way of *coram nobis* is unavailable. *See Castro*, 26 F.3d at 559 (*coram nobis* review is appropriate only when the petitioner is no longer in custody).

D. Writ of *Audita Querella*

In light of the unusual circumstance of this case, the Court considers *sua sponte* whether relief by way of a writ of *audita querella* would be applicable to Petitioner.

"The writ of *audita querela* permits a defendant to obtain relief against a judgment because of some legal defense arising after the judgment." *United States v. Banda*, 1 F.3d

354, 356 (5th Cir. 1993). *See also United States v. Miller,* 599 F.3d 484, 489 (5th Cir. 2010) ("a writ of *audita querela* is used to challenge a judgment that was correct at the time it was rendered but which is made infirm by matters that arose after its rendition."). For a defendant seeking post-conviction relief, the writ "is a slender reed upon which to lean." *Banda,* 1 F.3d at 356. As noted in *Banda* and restated in *Miller,* "[i]t is an open question whether the . . . writ survives as a post-conviction remedy." *Banda,* 1 F.3d at 356; *see also Miller,* 599 F.3d at 489 ("the writ of *audita querela* might also survive in criminal adjudications, if there is a gap for it to fill.").

Nevertheless, even assuming the writ survives, it is available only "where there is a legal objection to a judgment which has arisen subsequent to that judgment." *Miller,* 599 F.3d at 489. "Purely equitable grounds for relief do not justify the issuance of a writ of *audita querela*." *Id.* In addition, "the writ is only available where the legal objection raised cannot be brought pursuant to any other post-conviction remedy." *Id.* It is now well established that a petitioner may not seek a writ of *audita querela* if he "may seek redress under § 2255." *Banda,* 1 F.3d at 356. Nor can a petitioner use the writ to circumvent the procedural and legal requirements of section 2255, including the limit on second or successive motions. *See United States v. Valdez-Pacheco,* 237 F.3d 1077, 1080 (9th Cir. 2001) ("A prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the post-conviction remedies that must be filled by the common law writs.").

Here, Petitioner cannot establish a legal objection or defense to the judgment of

conviction. His arguments regarding Morrow's lack of credibility, which began to surface only *after* his guilty plea and were not established until *after* his sentencing, rely solely on equitable principles that are not cognizable in the context of a writ of *audita querela*. *Miller*, 599 F.3d at 489. Moreover, regardless of how Petitioner labels his petition, it is nothing more than a collateral attack on the validity of his guilty plea conviction which was timely and properly brought under section 2255. Therefore, relief by way of a writ for *audita querella* is unavailable.

      E.      <u>Evidentiary Hearing and Discovery Request</u>

Petitioner maintains that he is entitled to an evidentiary hearing to develop the claims raised in his section 2255 motion. He also requests the Court to authorize discovery under Rule 6(b), of the rules Governing Section 2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (petitioner was not entitled to evidentiary hearing because he did not meet his burden of proof under section 2255). Accordingly, because Petitioner's claims lack merit, no evidentiary hearing is required in this section 2255 proceeding. Likewise, the Court denies Petitioner's request for discovery.

## III.  CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 and, in the alternative, petition for writ of error *coram nobis* are **DENIED**.

Signed this 17th day of May, 2012.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE